**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| KRISTIN D. FREEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | |
| v. | ) | |
| | ) | |
| Omaha Public Schools, Omaha, | ) | |
| Nebraska, a Political Subdivision, | ) | **JURY TRIAL DEMANDED** |
| MATTHEW J. RAY, in his official and | ) | **Place of Trial: Omaha, Nebraska** |
| individual capacity, GLENN E. | ) | |
| MITCHELL, in his official and | ) | |
| individual capacity, and TIFFANY | ) | |
| TATE-COLLINS, in her official and | ) | |
| individual capacity and AMY J. | ) | |
| HALLAM, in her official and | ) | |
| individual capacity and MICHAEL | ) | |
| MORRIS, in his official and individual | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW Plaintiff Kristin D. Freeman, by and through her attorney, and for her cause of action against the Omaha Public Schools, Matthew J. Ray, Glenn E. Mitchell, Tiffany Tate-Collins, Amy J. Hallem, and Michael Morris, states the following:

## I.    NATURE OF THE CASE

1. This is an action under Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 1983, 42 U.S.C. § 1981, Title IX of the Education Amendments of 1972, 20 U.S.C § 1681, and the Nebraska Fair Employment Practice Act brought by Plaintiff Kristin D. Freeman challenging Omaha Public Schools, Matthew J. Ray, Glenn E. Mitchell, Tiffany Tate-Collins, Amy J. Hallem and Michael Morris for unlawful discrimination, retaliation, and constitutional violations based on her sex and/or race. Plaintiff Kristin D. Freeman also brings tort actions pursuant to state law.

## II.    PARTIES

2. Plaintiff Kristin D. Freeman ("Freeman") is a resident of Douglas County, Omaha, Nebraska.

3. Defendant Omaha Public Schools is a political subdivision in Douglas County, Nebraska, with its central offices at 3215 Cuming Street, Omaha, NE 68131.

1

4.  At all relevant times, the City of Omaha employed at least fifteen employees for each working day in each of twenty or more calendar weeks within the appropriate time periods pursuant to the Nebraska Fair Employment Practices Act and Title VII of the Civil Rights Act of 1964, as amended.

5.  During all relevant time periods, the Omaha Public Schools ("OPS" or "the District") employed more than 500 employees.

6.  Defendant Matthew J. Ray ("Ray") is a resident of Douglas County, Omaha, Nebraska. During all relevant times, he was the Superintendent of Omaha Public Schools.

7.  Defendant Glenn E. Mitchell ("Mitchell") is a resident of Nebraska. At all relevant times, he was the Principal and Freeman's supervisor at Harrison Elementary School, an Omaha Public Schools school located at 5304 Hamilton St, Omaha, NE 68132.

8.  Defendant Tiffany Tate-Collins ("Tate-Collins") is a resident of Douglas County, Omaha, Nebraska. During all relevant times, she was the Title IX Coordinator at Omaha Public Schools.

9.  Defendant Amy J. Hallem ("Hallem") is a resident of Nebraska. During all relevant times, she was the Nurse at Harrison Elementary School for Omaha Public Schools, located at 5304 Hamilton St, Omaha, NE 68132.[1]

10. Defendant Michael Morris ("Morris") is a resident of Douglas County, Nebraska. During all relevant times, he was the Security Guard at Harrison Elementary School for Omaha Public Schools, located at 5304 Hamilton St, Omaha, NE 68132.

## III.    JURISDICTION AND VENUE

11. This Court has original jurisdiction pursuant to 28 U.S.C. § 1343 or 28 U.S.C. § 1331, under  Title VII of the Civil Rights Act, 42 U.S.C. § 1983, 42 U.S.C. § 1981, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

12. Venue is proper in Douglas County, Nebraska, as it is the county where a substantial portion of the events at issue occurred.

13. This Court has jurisdiction pursuant to 28 U.S.C. § 1367 over Freeman's state law claims.

## IV.    ADMINISTRATIVE PROCESS

---

[1] In Freeman's Charge of Discrimination, upon information and belief, she listed Amy Hallem's last name as Lineback. To remove all confusion,  Freeman is making allegations against Amy Hallem in her Charge of Discrimination.

14.   On February 3, 2025, within 300 days of the acts of which she complains, Freeman dual filed her Charge of Discrimination with the Nebraska Equal Opportunity Commission ("NEOC") (Charge No. NEB 1-24/25-2-55058-RS) and Equal Employment Opportunity Commission ("EEOC") (Charge No. EEOC 32E-2025-005246).

15.   On October 14, 2025, the NEOC issued its Notice of Right to Sue on Charge No. NEB 1-24/25-2-55058-RS.

16.   On December 3, 2025, the EEOC issued its Notice of Right to Sue for Charge No. EEOC 32E-2025-005246.

## V.   FACTUAL BACKGROUND

17.   On July 23, 2024, Freeman, an African American woman, accepted Omaha Public Schools' offer of employment as a Paraprofessional Health Aide.

18.   Freeman was hired by her supervisor, Mitchell, the principal of Harrison Elementary School.

19.   Before Freeman's July 2024 hire, she had applied to work at Omaha Public Schools multiple times since 2000, consistently seeking to serve youth as an Omaha Public Schools employee. After 24 years, Freeman finally secured the Paraprofessional Health Aide position at Harrison Elementary School.

20.   Freeman's duties included performing general nursing tasks, such as triaging students, maintaining files and records, entering data, assisting with screenings, monitoring students, and working under Harrison Elementary School nurse, Hallem, who is white.

21.   On September 24, 2024, while at work, Hallem offered Freeman a banana. When she accepted and ate it, Hallem called Freeman a monkey.

22.   Freeman confronted Hallam, telling her that the comment was offensive and racist; however, Hallam found her remark, that is, calling Freeman a monkey, hilarious.

23.   On September 25, 2024, Freeman told Mitchell that Hallem, a white nurse, had called her, an African American employee, a monkey while she was eating a banana.

24.   Mitchell responded, "I don't know how you deal with [Hallem]; I don't know how you put up with that," yet he took no subsequent employment-related action.

25.   A few weeks after Hallem called Freeman a monkey after giving her a banana, on October 24, 2025, in Freeman's presence, Hallem said, "I need to look for little monkeys in the school," and kept saying she was "searching for monkeys." When

3

Hallem returned to the nurse's office after "looking for monkeys," Freeman asked if she had found what she was looking for. Hallem said she had not.

26. Freeman again complained to Mitchell, telling him that Hallem, a white nurse, repeatedly used racist language directed at or around Freeman. Yet OPS took no employment-related action to address racial harassment.

27. Hallem used the word 'monkey' twice at Freeman—once while giving her a banana—which Freeman recognized as an unambiguous racial slur widely acknowledged as opprobrium, stigmatizing African Americans based on race.

28. After Hallem called Freeman a monkey while giving her a banana and telling her she was looking for monkeys in the school, Freeman made numerous requests for an OPS investigation into racial harassment and explicitly called for district training to address racial harassment.

29. Mitchell's response to Freeman was, "What do you want me to do?" He only set up a meeting with Hallem and Freeman, took no action on her complaints, did not initiate anti-harassment training, and did not provide adequate supervision. There was no investigation pursuant to 4002 Equal Opportunity Employment; 4003 Anti-discrimination, Anti-harassment, and Anti-retaliation, or disciplinary action.

30. Therein, the meeting between Hallem, Freeman, and Mitchell:

   a. Hallem admitted to calling Freeman a monkey after handing her a banana.

   b. Hallem admitted to telling Freeman several times that she was "looking for monkeys" at the school, after the incident in which she called Freeman a monkey.

   c. Hallem described the act of calling Freeman a monkey and giving her a banana as insensitive, and she understands that she was ignorant.

   d. Hallem admitted that her mouth goes a "little too much at times," and when she told her daughter about calling Freeman a monkey, her daughter said she needs to watch her mouth and that what Hallem did was inappropriate.

   e. After soul-searching, Hallem admitted there was no excuse for calling Freeman a monkey after giving her a banana. She decided she needs to try to watch her mouth and think before she speaks.

   f. Hallem admitted that she had wronged Freeman and acknowledged that it would take time for Freeman to heal from her actions.

31. On October 29, 2024, Harrison Elementary School Security Guard Morris entered Freeman's office and offered her some candy, which she accepted. Freeman, who was still new to the school, was told by Morris that he would like to show her something once she had some free time. When Freeman had a break, she found Morris, who directed and lured her to the basement of Harrison Elementary School.

32. While in the empty basement, Morris grabbed Freeman and pulled her close to his body, attempting to kiss her.

33. Freeman tried to pull away, but Morris' strength overpowered her, and he kept pulling her closer in an attempt to kiss Freeman.

34. Morris kept pulling Freeman closer, trying to kiss her, but she said, "I have someone. Please, Stop."

35. Morris stopped, and Freeman headed back upstairs from the basement.

36. On October 30, 2024, Freeman reported to her supervisor, Mitchell, that she had been sexually harassed and assaulted by Morris.

37. Mitchell told Freeman to write down what happened, and he would start an investigation by reporting it to the individuals responsible for investigating sexual harassment complaints at the OPS administrative building.

38. After meeting with Mitchell about being sexually harassed by Morris, Freeman left Mitchell's office visibly disturbed and was approached by another employee. They briefly discussed what Morris had done to Freeman, and the employee said that Morris had propositioned her to go down to the basement to rub her back.

39. Freeman provided Mitchell with a statement, and Mitchell stated that someone from Human Resources ("HR") would contact Freeman.

40. In numerous conversations with Mitchell, Freeman complained about sexual and racial harassment at an Omaha Public School—elementary school, OPS' lack of anti-harassment training, and OPS' inadequate investigative procedures.

41. When no one from HR reached out to Freeman, she kept asking Mitchell what was going on with the investigation. In response, Mitchell showed Freeman Morris' employee badge and stated that Morris would not be returning to work at Harrison Elementary School.

42. Less than one working day after Mitchell told Freeman that Morris would not be returning to work, Morris returned to work, and Freeman saw him from a distance without being seen. This left work immediately, as seeing Morris back at work left Freeman feeling unprotected, deceived, unsafe, and mentally distressed.

*Discriminatory alterations in Freeman's terms, conditions, or privileges of employment.*

43. Under Freeman's employment terms and conditions, Ray, the Superintendent of OPS, is responsible for accepting and investigating complaints regarding OPS's nondiscrimination policies.

44. Per Freeman's employment terms and conditions, Tate-Collins, the Title IX Coordinator at OPS, is responsible for accepting and investigating complaints of sex discrimination, including sexual harassment, at OPS.

45. It is OPS policy to strictly prohibit and not tolerate unlawful discrimination, harassment, and retaliation of any kind by District employees, including co-workers, and OPS intends to comply with all state and federal laws prohibiting discrimination.

46. OPS defines harassment as a form of discrimination that includes verbal, nonverbal, written, graphic, or physical conduct related to a person's race and is sufficiently serious to deny, interfere with, or limit a person's ability to participate in or benefit from an educational or work program or activity.

47. OPS defines discriminatory harassment based on a person's race as conduct that may include, but is not limited to, name-calling, teasing, taunting, insults, slurs, or derogatory names or remarks.

48. Under OPS policy, once OPS becomes aware of possible harassment, the Superintendent will conduct a prompt, adequate, reliable, thorough, and impartial investigation to determine whether unlawful harassment has occurred and will take appropriate interim measures to protect the alleged victim and prevent further potential discrimination, harassment, or retaliation during the investigation.

49. According to OPS policy, once OPS becomes aware of allegations of sexual harassment, the District will process all reports or allegations of sexual harassment in accordance with the appropriate District procedures.

50. OPS defines discriminatory harassment based on a person's race as conduct that may include, but is not limited to, name-calling, teasing, taunting, insults, slurs, or derogatory names or remarks.

51. OPS policy includes examples of sexual harassment: unwelcome sexual advances or propositions, requests or pressure for sexual favors, and physical contact or touching of a sexual nature, including touching intimate body parts and inappropriate patting, pinching, rubbing, or brushing against another's body.

52. Per OPS policy, the Title IX Coordinator must promptly contact the complainant, or direct an official with authority to contact the complainant, to: discuss the availability of supportive measures; consider the complainant's wishes regarding

6

supportive measures; inform the complainant of the availability of supportive measures, with or without the filing of a formal complaint; and explain to the complainant the process for filing a formal complaint.

53. Per OPS policy, the District will provide supportive measures to complainants of sexual harassment. The District's supportive measures are designed to restore or preserve equal access to the District's education program or activity or workplace without unreasonably burdening the other party, including measures to protect the safety of all parties or the District's educational environment or workplace, or to deter sexual harassment. Supportive measures may include counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, additional supervision or planned accompaniment, mutual restrictions on contact between the parties, changes in work locations, leaves of absence, increased security, supervision or monitoring of certain areas of school grounds, and other similar measures.

54. Ray failed to investigate Freeman's complaints of racial discrimination, in compliance with OPS policy—that is, being called a monkey by her co-worker, Hallem.

55. Tate-Collins failed to investigate Freeman's complaints of sexual harassment, including being sexually assaulted by Morris, in accordance with OPS policy and Title IX regulations.

56. Ray failed to provide Freeman with any interim measures to protect Freeman and prevent further potential discrimination, harassment, or retaliation after her co-worker, Hallem, called her a monkey on two separate occasions.

57. Tate-Collins failed to provide Freeman with any interim measures to protect Freeman and prevent further potential discrimination, harassment, or retaliation after her co-worker, Morris, sexually assaulted her.

58. Freeman received no supportive measures from OPS after Morris sexually assaulted her.

*Retaliatory alterations in the terms, conditions, or privileges of Freeman's employment.*

59. It is OPS policy to prohibit retaliation, intimidation, threats, coercion, or discrimination against any person for opposing discrimination, including harassment, or for participating in the District's discrimination complaint process, making a complaint, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing.

60. Per OPS policy, once the District knows or reasonably should know of possible harassment, including violence, the District will conduct a prompt, adequate, reliable, thorough, and impartial investigation under OPS' Grievance Procedures

7

to determine whether unlawful harassment occurred and, if necessary, take appropriate interim measures.

61. Per OPS policy, the District will take immediate steps to stop retaliation and prevent its recurrence against the alleged victim and any person associated with the alleged victim. These steps will include, but are not limited to, notifying employees and others that they are protected from retaliation, ensuring they know how to report future complaints, and initiating follow-up contact with the complainant to determine whether any additional acts of discrimination, harassment, or retaliation have occurred.

62. Per OPS policy, the alleged victim will be notified of options to avoid contact with the alleged harasser, such as changing a class or prohibiting the alleged harasser from having any contact with the alleged victim pending the outcome of the District's investigation. The District will minimize any burden on the alleged victim when taking interim measures to protect the alleged victim.

63. Under OPS policy, individuals who file complaints or grievances alleging discrimination will not face retaliation for doing so.

64. In retaliation, OPS never provided Freeman with a prompt, adequate, reliable, thorough, and impartial investigation under OPS' Grievance Procedures to determine whether unlawful harassment occurred.

65. In retaliation, OPS failed to:

   a. Notify Freeman that she is protected from retaliation.

   b. OPS never ensured that Freeman knew to report future complaints.

   c. OPS never initiated follow-up contact with Freeman to determine whether any additional acts of discrimination, harassment, or retaliation had occurred.

66. In retaliation, OPS never provided Freeman with immediate, interim measures to protect Freeman and prevent further potential discrimination, harassment, or retaliation during the pending investigation, such as, but not limited to:

   a. Notifying Freeman of her options to avoid contact with Hallem or Morris.

   b. Prohibiting the Hallem or Morris from having any contact with Freeman pending the outcome of the District's investigation.

67. Per OPS policy, the District will notify [Freeman] of the right to file a criminal complaint.

8

68. In retaliation, OPS never notified Freeman of her right to file a criminal complaint against Morris.

69. In retaliation, OPS failed to investigate Freeman's complaint of race-based harassment, as outlined in OPS policy on investigating discrimination or harassment.

70. In retaliation, OPS failed to investigate Freeman's sexual harassment complaint, as required by OPS Policy 1210 Title IX.

*OPS failed to adequately train, screen, supervise, discipline employees or implement preventive measures, which caused Freeman's harm.*

71. The District will provide training to all appropriate individuals on sexual discrimination, sexual harassment, sexual violence, and Title IX. The District will also provide additional training to all staff responsible for implementing the complaint procedures.

72. Under OPS policy, the District will ensure that District employees are adequately trained to understand and identify acts of discrimination, harassment, and retaliation, and to report them to the appropriate District officials or employees. This training will include, *at a minimum,* the following areas:

   a. The current legal standards and compliance requirements under federal, state, and local laws and regulations governing anti-discrimination, anti-harassment, and anti-retaliation, including several specific examples of discrimination, harassment (including acts of violence because of a person's sex or other protected characteristics), and retaliation.

   b. The District's current anti-discrimination, anti-harassment, and anti-retaliation notice, policies, grievance procedure, and discrimination complaint form, including the specific steps and timeframes for the investigative procedures and the District's disciplinary procedures.

   c. Specific examples and guidance on how to report complaints or observations of discrimination, harassment, or retaliation to appropriate District officials or employees. In addition, the District will emphasize that employees, students, third parties, and others should not be deterred from filing a complaint or reporting discrimination. For instance, if a student is the victim of sexual violence, a form of sexual harassment, but is concerned that alcohol or drugs were involved, school staff should inform the student that the District's primary concern is student safety, that any other rule violations will be addressed separately from the sexual violence allegation, and that the use of alcohol or drugs never makes the victim at fault for sexual violence.

    d.  Potential consequences for violating the District's anti-discrimination, anti-harassment, and anti-retaliation policies include discipline.

    e.  Potential remedies, including immediate and interim measures, to eliminate discrimination, harassment, and retaliation, prevent their recurrence, and remedy their effects.

    f.  A description of victim resources, including comprehensive victim services, to address acts of discrimination and harassment, including acts of violence because of a person's sex or other protected characteristics, and a list of those resources for distribution to trainees.

    g.  The District shall ensure that employees designated to address or investigate discrimination, harassment, and retaliation, including designated compliance administrators, receive additional specific training to promptly and effectively investigate and respond to complaints and reports of discrimination and to know the District's grievance procedures and applicable confidentiality requirements.

73.  OPS failed to adequately train, screen, or supervise its employees, as outlined in ¶71-72, thereby causing Freeman's harm.

74.  OPS failed to respond to Freeman's complaint of sexual harassment despite having notice of sexual harassment, including allegations of sexual harassment.

75.  OPS failed to promptly respond to Freeman's complaint of sexual harassment in a manner that was not deliberately indifferent, meaning a response that was not clearly unreasonable in light of the known circumstances. Morris received employment-related discipline.

76.  OPS failed to investigate and adjudicate Freeman's sexual harassment complaint through a grievance process that complies with Title IX.

77.  In light of Freeman's harassment complaints, OPS failed to:

    a.  Offer supportive measures to Freeman.

    b.  Promptly contact Freeman confidentially to discuss the availability of supportive measures, consider her wishes with respect to supportive measures, or inform her of the availability of supportive measures with or without the filing of a formal complaint, and explain to Freeman the process for filing a formal complaint.

    c.  OPS failed to investigate Freeman's sexual harassment allegations adequately under Title IX.

10

78. On November 11, 2024, Freeman called OPS HR and was told that if an individual under investigation had returned to work, it meant the investigation would be closed.

79. Recently to Freeman's allegations, there have been numerous (public) incidents involving OPS' employees and sexual assault and harassment, including failures to screen, train, or protect against sexual harassment or assault.

   a. Greggory Sedlacek at Fontenelle Elementary School.

   b. Eric Nelson at Fontenelle Elementary School.

   c. Erin Ward is a substitute teacher for OPS.

   d. Steven Lambert at Omaha North High School.

   e. Daniel Bartels at Davis Middle School.

   f. Ronald Powell at Omaha North High School.

   g. Aweys Salat at Bryan Middle School.

   h. Jarrell Williams at Omaha Northwest High School.

80. On November 12, 2024, Freeman resigned, constituting constructive discharge because her efforts to address sexual and racial harassment were ignored, despite her attempts to raise complaints or to exercise the terms, conditions, or privileges of employment through OPS policies: 4002 Equal Opportunity Employment; 4003 Anti-discrimination, Anti-harassment, and Anti-retaliation; 1210 Title IX. These experiences left Freeman feeling unprotected, unsafe, and mentally distressed, leaving her no choice but to resign rather than work with her sexual harasser.

> Dear Glen Mitchell
>
> I'm writing a letter to formally resign from my position as Health Aide Para at Harrison Elementary School, effective November 12, 2024. I have made this decision due to an ongoing situation at the workplace that has affected my mental and well-being and ability to perform my duties. While I have attempted to address these issues through proper protocol such as the sexual harassment and Ethnic slurs I feel like has not beem handle approraiate This has led me to come to the conclusion that resigning is the best action for me and my personal and professional well being that I resign immediately. Thank you for the opportunity

11

81.   Matthew J. Ray, the Superintendent of Omaha Public Schools, recommended and accepted Freeman's resignation without even as much as inquiring into or initiating a formal investigation into Freeman's complaints of racial harassment or sexual assault while she was employed at Harrison Elementary School, despite the notice and reason for her resignation, and the Board of Education approved.



82.   Freeman's job performance was satisfactory.

83.   The acts or omissions committed by the Defendants violated the Omaha Municipal Code, Chapter 13, Article III, Div. 2, Sec. 13-89 and Chapter 13, Article III, Div. 4, Sec. 13-116.

## VI.   CAUSES OF ACTION

### Count One
### Racial Harassment in Violation of Title VII of the Civil Rights Act and The Nebraska Fair Employment Practice Act
### [Defendant: Omaha Public Schools]

84.   Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

85.   42 U.S.C. § 2000e-2(a)(1), states in relevant part:
> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]

12

86. Freeman has been discriminated against by Omaha Public Schools on the basis of her race in violation of Title VII in that Plaintiff suffered a hostile, racist workplace, and Omaha Public Schools subjected Freeman to unwelcome racial harassment.

87. As a proximate result of Omaha Public Schools' discrimination, Freeman has suffered and continues to suffer substantial loss of past and future earnings, other employment benefits, all to Plaintiff's damage in an amount to be determined at trial.

88. As a further proximate result of Omaha Public Schools's actions, Freeman has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, anxiety, loss of enjoyment of life, loss of self-esteem, loss of self-confidence, injury to her reputation, and other incidental and consequential damages and expenses, all to Plaintiff's damage in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant Omaha Public Schools in an amount which will fully and fairly compensate her for her general and special damages, for appropriate equitable relief, for interest as allowed by law, for attorneys' fees, for the costs and expenses of this action, expert fees, and for such other relief as may be just in the circumstances.

### Count Two
### Sexual Harassment in Violation of Title VII of the Civil Rights Act and The Nebraska Fair Employment Practice Act
### [Defendant: Omaha Public Schools]

89. Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

90. 42 U.S.C. § 2000e-2(a)(1), states in relevant part:
    It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]

91. Freeman has been discriminated against by Omaha Public Schools on the basis of her sex in violation of Title VII in that Plaintiff suffered a hostile, sexist workplace, and Omaha Public Schools subjected Freeman to unwelcome sexual harassment.

92. As a proximate result of Omaha Public Schools' discrimination, Freeman has suffered and continues to suffer substantial loss of past and future earnings, other

employment benefits, all to Plaintiff's damage in an amount to be determined at trial.

93. As a further proximate result of Omaha Public Schools's actions, Freeman has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, anxiety, loss of enjoyment of life, loss of self-esteem, loss of self-confidence, injury to her reputation, and other incidental and consequential damages and expenses, all to Plaintiff's damage in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant Omaha Public Schools in an amount which will fully and fairly compensate her for her general and special damages, for appropriate equitable relief, for interest as allowed by law, for attorneys' fees, for the costs and expenses of this action, expert fees, and for such other relief as may be just in the circumstances.

### Count Three
### Discrimination in Violation of Title VII of the Civil Rights Act and The Nebraska Fair Employment Practice Act (Based on Race)
### [Defendant: Omaha Public Schools]

94. Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

95. 42 U.S.C. § 2000e-2(a)(1), states in relevant part:
    It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]

96. Freeman has been discriminated against by Omaha Public Schools on the basis of her race in violation of Title VII in that Plaintiff was discriminated against with respect to terms, conditions, or privileges of employment, which resulted in some harm or a disadvantageous change to an employment term or condition.

97. As a proximate result of Omaha Public Schools' discrimination, Freeman has suffered and continues to suffer substantial loss of past and future earnings, other employment benefits, all to Plaintiff's damage in an amount to be determined at trial.

98. As a further proximate result of Omaha Public Schools's actions, Freeman has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, anxiety, loss of enjoyment of life, loss of self-esteem, loss of self-confidence, injury to her reputation, and

14

other incidental and consequential damages and expenses, all to Plaintiff's damage in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant Omaha Public Schools in an amount which will fully and fairly compensate her for her general and special damages, for appropriate equitable relief, for interest as allowed by law, for attorneys' fees, for the costs and expenses of this action, expert fees, and for such other relief as may be just in the circumstances.

## Count Four
### Discrimination in Violation of Title VII of the Civil Rights Act and The Nebraska Fair Employment Practice Act (Based on Sex)
### [Defendant: Omaha Public Schools]

99.   Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

100.   42 U.S.C. § 2000e-2(a)(1), states in relevant part:
It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]

101.   Freeman has been discriminated against by Omaha Public Schools on the basis of her sex in violation of Title VII, in that Plaintiff was discriminated against with respect to the terms, conditions, or privileges of employment, resulting in some harm or a disadvantageous change to an employment term or condition.

102.   As a proximate result of Omaha Public Schools' discrimination, Freeman has suffered and continues to suffer substantial loss of past and future earnings, other employment benefits, all to Plaintiff's damage in an amount to be determined at trial.

103.   As a further proximate result of Omaha Public Schools' actions, Freeman has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, anxiety, loss of enjoyment of life, loss of self-esteem, loss of self-confidence, injury to her reputation, and other incidental and consequential damages and expenses, all to Plaintiff's damage in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant Omaha Public Schools in an amount which will fully and fairly compensate her for her general and special damages, for appropriate equitable relief, for interest as allowed by law, for

attorneys' fees, for the costs and expenses of this action, expert fees, and for such other relief as may be just in the circumstances.

### Count Five
### Retaliation in Violation of Title VII of the Civil Rights Act and The Nebraska Fair Employment Practice Act (Based on Race as Protective Activity) [Defendant: Omaha Public Schools]

104.   Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

105.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides...

> ...that it shall be unlawful employment practice for an employer: [T]o...discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

106.   Freeman engaged in protective activity by making racial harassment/hostile work environment claims against Omaha Public Schools.

107.   Omaha Public Schools knew that Freeman engaged in protected activity.

108.   In retaliation for Freeman's protected complaint, Omaha Public Schools engaged in various retaliatory actions against Plaintiff, including conducting a sham/paint job investigation into her complaints of racial and sexual harassment, and constructively discharging her.

109.   As a proximate result of Omaha Public Schools' retaliation, Freeman has suffered and continues to suffer substantial loss of past and future earnings, other employment benefits, all to Plaintiff's damage in an amount to be determined at trial.

110.   As a further proximate of the Omaha Public Schools' violation and retaliation, Freeman has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, anxiety, loss of enjoyment of life, loss of self-esteem, loss of self-confidence, injury to her reputation, loss of employment opportunities, and other incidental and consequential damages and expenses, all to Plaintiff's damage in an amount to be determined at trial.

WHEREFORE, Plaintiff Freeman prays for judgment against Defendant Omaha Public Schools in an amount which will fully and fairly compensate her for her general

and special damages, for appropriate equitable relief, for position reinstatement, for interest as allowed by law, for attorneys' fees, for the costs and expenses of this action, expert fees, and for such other relief as may be just in the circumstances.

### Count Six
### Retaliation in Violation of Title VII of the Civil Rights Act and The Nebraska Fair Employment Practice Act. (Based on Sex as Protective Activity) [Defendant: Omaha Public Schools]

111.   Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

112.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides...

> ...that it shall be unlawful employment practice for an employer: [T]o . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

113.   Freeman engaged in protective activity by making sexual harassment and hostile work environment claims against Omaha Public Schools.

114.   Omaha Public Schools knew that Freeman engaged in protected activity.

115.   In retaliation for Freeman's protected complaint, Omaha Public Schools engaged in various retaliatory actions against Plaintiff, including conducting a sham/paint job investigation into her complaints of racial and sexual harassment, and constructively discharging her.

116.   As a proximate result of Omaha Public Schools' retaliation, Freeman has suffered and continues to suffer substantial loss of past and future earnings, other employment benefits, all to Plaintiff's damage in an amount to be determined at trial.

117.   As a further proximate of the Omaha Public Schools' violation and retaliation, Freeman has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, anxiety, loss of enjoyment of life, loss of self-esteem, loss of self-confidence, injury to her reputation, loss of employment opportunities, and other incidental and consequential damages and expenses, all to Plaintiff's damage in an amount to be determined at trial.

17

WHEREFORE, Plaintiff Freeman prays for judgment against Defendant Omaha Public Schools in an amount which will fully and fairly compensate her for her general and special damages, for appropriate equitable relief, for position reinstatement, for interest as allowed by law, for attorneys' fees, for the costs and expenses of this action, expert fees, and for such other relief as may be just in the circumstances.

**Count Seven**
**VIOLATION OF 42 U.S.C. § 1981—Race Discrimination**
**[Defendants: Omaha Public Schools, Ray, Mitchell, and Hallem]**

118.   Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

119.   42 U.S.C. § 2000e-2(a)(1), states in relevant part:
      It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]

120.   Freeman has been discriminated against by Omaha Public Schools on the basis of her race in violation of Title VII, in that Plaintiff was discriminated against with respect to the terms, conditions, or privileges of employment, resulting in some harm or a disadvantageous change to an employment term or condition.

121.   As a proximate result of Omaha Public Schools' discrimination, Freeman has suffered and continues to suffer substantial loss of past and future earnings, other employment benefits, all to Plaintiff's damage in an amount to be determined at trial.

122.   As a further proximate result of Omaha Public Schools' actions, Freeman has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, anxiety, loss of enjoyment of life, loss of self-esteem, loss of self-confidence, injury to her reputation, and other incidental and consequential damages and expenses, all to Plaintiff's damage in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants Omaha Public Schools, Ray, Mitchell, and Hallem in an amount which will fully and fairly compensate her for her general and special damages, for appropriate equitable relief, for interest as allowed by law, for attorneys' fees, for the costs and expenses of this action, expert fees, and for such other relief as may be just in the circumstances.

**Count Eight**

18

**VIOLATION OF 42 U.S.C. § 1981—Retaliation (Based on Race as Protective Activity)**
**[Defendants: Omaha Public Schools, Ray, Mitchell, Tate-Collins, and Hallem]**

123.   Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

124.   Freeman engaged in protective activity by making racial harassment and hostile work environment claims against Omaha Public Schools.

125.   Omaha Public Schools knew that Freeman engaged in protected activity and opposed practices made unlawful by 42 U.S.C. § 1981.

126.   In retaliation for Freeman's protected complaint, Omaha Public Schools engaged in various retaliatory actions against Plaintiff, including conducting a sham/paint job investigation into her complaints of racial and sexual harassment, and constructively discharging her.

127.   The unlawful employment practices were willful, wanton, and malicious, and demonstrated a reckless indifference to or conscious disregard for the rights of Freeman under 42 U.S.C. § 1981.

128.   But for Omaha Public Schools' violation and retaliation, Freeman has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, anxiety, loss of enjoyment of life, loss of self-esteem, loss of self-confidence, injury to her reputation, loss of employment opportunities, and other incidental and consequential damages and expenses, all to Plaintiff's damage in an amount to be determined at trial.

WHEREFORE, Plaintiff Freeman prays for judgment against Defendants Omaha Public Schools, Ray, Mitchell, Tate-Collins, and Hallem in an amount which will fully and fairly compensate her for her general, special and punitive damages, for appropriate equitable relief, for interest as allowed by law, for attorneys' fees, for the costs and expenses of this action, expert fees, and for such other relief as may be just in the circumstances.

<u>Count Nine</u>
**42 U.S.C. § 1983—First Amendment Retaliation**
**[Defendants: Omaha Public Schools, Ray, Mitchell]**

129.   Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

130.   42 U.S.C. § 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any

citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .

131.  In numerous conversations with Mitchell, Freeman engaged in protected speech when she complained about sexual and racial harassment, in an Omaha Public Schools—elementary school, OPS' lack of anti-harassment training, and inadequate investigative procedures or supervision by OPS.

132.  Freeman's speech was protected activity under the First Amendment.

133.  Freeman's speech addressed a matter of public concern, and not that of an employee upon matters only of personal interest.

134.  In retaliation for Freeman's protected speech, Defendants engaged in various retaliatory actions against Plaintiff, including conducting a sham/paint job investigation into her complaints of racial and sexual harassment, and constructively discharging her.

135.  The unlawful employment practices were willful, wanton, and malicious, and demonstrated a reckless indifference to or conscious disregard for the rights of Freeman under 42 U.S.C. § 1983.

136.  But for Omaha Public Schools' violation and retaliation, Freeman has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, anxiety, loss of enjoyment of life, loss of self-esteem, loss of self-confidence, injury to her reputation, loss of employment opportunities, and other incidental and consequential damages and expenses, all to Plaintiff's damage in an amount to be determined at trial.

WHEREFORE, Plaintiff Freeman prays for judgment against Defendants Omaha Public Schools, Ray, Mitchell, and Tate-Collins in an amount which will fully and fairly compensate her for her general, special and punitive damages, for appropriate equitable relief, for interest as allowed by law, for attorneys' fees, for the costs and expenses of this action, expert fees, and for such other relief as may be just in the circumstances.

### Count Ten
### 42 U.S.C. § 1983—Violation of the Equal Protection Clause of the United States Constitution Based on Racial Harassment
*Monell - OPS: Failure to Train, Screen, Supervise, or Discipline*
### [Defendants: Omaha Public Schools and Hallem]

137.  Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth

20

138. 42 U.S.C. §1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .

139. Freeman has been discriminated against on the basis of her race in violation of the Equal Protection Clause in that Freeman suffered a hostile, racist workplace and was subjected to unwelcome racial harassment.

140. Defendants acted under color of law and did not have the discretion to act in an unlawful manner. Defendants, in their individual capacities, deprived Plaintiff of rights protected by the Equal Protection Clause of the United States Constitution.

141. Defendant Omaha Public Schools failed to act, such as a failure to adequately screen, train, supervise, or discipline municipal employees, or Defendant OPS' policymaker ratified the discriminatory actions of its employees.

142. Defendant Omaha Public Schools was deliberately indifferent to the constitutional rights injured.

143. Defendants Omaha Public Schools and Hallem acted with reckless or deliberate indifference to the rights of Plaintiff, which were clearly established under the law, and with malice.

144. Defendant Omaha Public Schools deprived Freeman of her right to be free from race discrimination, secured by the Equal Protection Clause of the United States Constitution, which was clearly established at all times material hereto.

145. As a proximate result of Defendants' unlawful race discrimination, Freeman has suffered and continues to suffer substantial loss of past and future earnings, other employment benefits, all to Freeman's damage in an amount to be determined at trial.

146. As a further proximate result of Defendant's actions, Freeman has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, anxiety, loss of enjoyment of life, loss of self-esteem, loss of self-confidence, injury to her reputation, and other incidental and consequential damages and expenses, all to Freeman's damages in an amount to be determined at trial.

21

WHEREFORE, Plaintiff Freeman prays for judgment against Defendants Omaha Public Schools and Hallem in an amount which will fully and fairly compensate her for her general and special damages, for appropriate equitable relief, for interest as allowed by law, for attorneys' fees, for the costs and expenses of this action, expert fees, punitive damages as to requisite Defendants and for such other relief as may be just in the circumstance.

<u>**Count Eleven**</u>
**42 U.S.C. § 1983—Violation of the Equal Protection Clause of the United States Constitution Based on Sexual Harassment**
*Monell – OPS: Failure to Train, Screen, Supervise or Discipline*
*Monell - OPS: Unofficial "Custom"*
**[Defendants: Omaha Public Schools and Morris]**

147. Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

148. 42 U.S.C. §1983, states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .

149. Freeman has been discriminated against on the basis of her sex in violation of the Equal Protection Clause in that Freeman suffered a hostile, sexist workplace and was subjected to unwelcome sexual harassment.

150. Defendants acted under color of law and did not have the discretion to act in an unlawful manner. Defendants, in their individual capacities, deprived Plaintiff of rights protected by the Equal Protection Clause of the United States Constitution.

151. Defendant Omaha Public Schools failed to act, such as a failure to adequately screen, train, supervise, or discipline municipal employees, or Defendant OPS' policymaker ratified the discriminatory actions of its employees.

152. Defendant Omaha Public Schools' failure to screen, train, or protect against sexual harassment or assault, or to comply with Title IX, has been a persistent, widespread pattern of unconstitutional conduct of which officials have notice and subsequently react with deliberate indifference or tacit authorization.

153. Defendant Omaha Public Schools was deliberately indifferent to the constitutional rights injured.

154. Defendants Omaha Public Schools and Morris acted with reckless or deliberate indifference to the rights of Plaintiff, which were clearly established under the law, and with malice.

155. As a proximate result of Defendants' unlawful sex discrimination, Freeman has suffered and continues to suffer substantial loss of past and future earnings, other employment benefits, all to Freeman's damage in an amount to be determined at trial.

156. As a further proximate result of Defendant's actions, Freeman has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, anxiety, loss of enjoyment of life, loss of self-esteem, loss of self-confidence, injury to her reputation, and other incidental and consequential damages and expenses, all to Freeman's damages in an amount to be determined at trial.

WHEREFORE, Plaintiff Freeman prays for judgment against Defendants Omaha Public Schools and Morris in an amount which will fully and fairly compensate her for her general and special damages, for appropriate equitable relief, for interest as allowed by law, for attorneys' fees, for the costs and expenses of this action, expert fees, punitive damages as to requisite Defendants and for such other relief as may be just in the circumstances.

### Count Twelve
### 42 U.S.C. § 1983—Violation of the Equal Protection Clause of the United States Constitution Based on Race Discrimination
### *Monell – OPS: Failure to Train, Screen, Supervise or Discipline*
### [Defendants: Omaha Public Schools, Ray, and Hallem]

157. Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

158. 42 U.S.C. §1983, states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .

159. Freeman has been discriminated against by Omaha Public Schools on the basis of her race in violation of Title VII, in that Plaintiff was discriminated against with

respect to the terms, conditions, or privileges of employment, resulting in some harm or a disadvantageous change to an employment term or condition.

160. Defendants acted under color of law and did not have the discretion to act in an unlawful manner. Defendants, in their individual capacities, deprived Plaintiff of rights protected by the Equal Protection Clause of the United States Constitution.

161. Defendant Omaha Public Schools failed to act, such as a failure to adequately screen, train, supervise or discipline municipal employees, or Defendant OPS' policymaker ratified the discriminatory actions of its employees.

162. Defendant Omaha Public Schools was deliberately indifferent to the constitutional rights injured.

163. Defendants Omaha Public Schools, Ray, and Hallem acted with reckless or deliberate indifference to the rights of Plaintiff, which were clearly established under the law, and with malice.

164. As a proximate result of Defendants' unlawful race discrimination, Freeman has suffered and continues to suffer substantial loss of past and future earnings, other employment benefits, all to Freeman's damage in an amount to be determined at trial.

165. As a further proximate result of Defendant's actions, Freeman has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, anxiety, loss of enjoyment of life, loss of self-esteem, loss of self-confidence, injury to her reputation, and other incidental and consequential damages and expenses, all to Freeman's damages in an amount to be determined at trial.

WHEREFORE, Plaintiff Freeman prays for judgment against Defendants Omaha Public Schools, Ray and Hallem in an amount which will fully and fairly compensate her for her general and special damages, for appropriate equitable relief, for interest as allowed by law, for attorneys' fees, for the costs and expenses of this action, expert fees, punitive damages as to requisite Defendants and for such other relief as may be just in the circumstance.

### Count Thirteen
**42 U.S.C. § 1983—Violation of the Equal Protection Clause of the United States Constitution Based on Sex Discrimination**
*Monell - OPS: Failure to Train, Screen, Supervise or Discipline*
**[Defendants: Omaha Public Schools, Mitchell, and Tate-Collins, Morris]**

166. Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

167. 42 U.S.C. §1983, states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .

168. Freeman has been discriminated against by Omaha Public Schools on the basis of her sex in violation of Title VII, in that Plaintiff was discriminated against with respect to the terms, conditions, or privileges of employment, resulting in some harm or a disadvantageous change to an employment term or condition.

169. Defendants acted under color of law and did not have the discretion to act in an unlawful manner. Defendants, in their individual capacities, deprived Plaintiff of rights protected by the Equal Protection Clause of the United States Constitution.

170. Defendant Omaha Public Schools failed to act, such as a failure to adequately screen, train, supervise, or discipline municipal employees, or Defendant OPS' policymaker ratified the discriminatory actions of its employees.

171. Defendant Omaha Public Schools was deliberately indifferent to the constitutional rights injured.

172. Defendants Omaha Public Schools, Mitchell, and Tate-Collins, Morris acted with reckless or deliberate indifference to the rights of Plaintiff, which were clearly established under the law, and with malice.

173. As a proximate result of Defendants' unlawful sex discrimination, Freeman has suffered and continues to suffer substantial loss of past and future earnings, other employment benefits, all to Freeman's damage in an amount to be determined at trial.

174. As a further proximate result of Defendant's actions, Freeman has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, anxiety, loss of enjoyment of life, loss of self-esteem, loss of self-confidence, injury to her reputation, and other incidental and consequential damages and expenses, all to Freeman's damages in an amount to be determined at trial.

WHEREFORE, Plaintiff Freeman prays for judgment against Defendants Omaha Public Schools, Mitchell, and Tate-Collins, Morris in an amount which will fully and fairly compensate her for her general and special damages, for appropriate equitable relief, for interest as allowed by law, for attorneys' fees, for the costs and expenses of this

25

action, expert fees, punitive damages as to requisite Defendants and for such other relief as may be just in the circumstances.

### Count Fourteen
### Constructive Discharge in Violation of Title VII of the Civil Rights Act and The Nebraska Fair Employment Practice Act
### [Defendant: Omaha Public Schools]

175. Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

176. Defendant Omaha Public Schools and/or their agents, with Defendants' authority, made Plaintiff's working conditions intolerable, forcing a reasonable person in Freeman's position to resign from her employment.

177. Defendants' agents, with Defendants' authority, acted with the intent of forcing Plaintiff to quit, or Freeman's resignation was a reasonably foreseeable or a predictable result of Defendants' actions.

178. As a proximate result of Omaha Public Schools' discrimination, Freeman has suffered and continues to suffer substantial loss of past and future earnings, other employment benefits, all to Plaintiff's damage in an amount to be determined at trial.

179. As a further proximate of the Omaha Public Schools' violation and retaliation, Freeman has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, anxiety, loss of enjoyment of life, loss of self-esteem, loss of self-confidence, injury to her reputation, loss of employment opportunities, and other incidental and consequential damages and expenses, all to Plaintiff's damage in an amount to be determined at trial.

WHEREFORE, Plaintiff Freeman prays for judgment against Defendant Omaha Public Schools in an amount which will fully and fairly compensate her for her general and special damages, for appropriate equitable relief, for position reinstatement, for interest as allowed by law, for attorneys' fees, for the costs and expenses of this action, expert fees, and for such other relief as may be just in the circumstances.

### Count Fifteen
### 42 U.S.C. § 1983—Violation of the Equal Protection Clause of the United States Constitution Based on Constructive Discharge
### *Monell - OPS: Failure to Train, Screen, Supervise or Discipline*
### *Monell - OPS: Unofficial "Custom"*
### [Defendants: Omaha Public Schools, Ray, Mitchell, and Tate-Collins]

26

180. Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

181. 42 U.S.C. §1983, states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .

182. Defendant Omaha Public Schools and/or their agents, with Defendants' authority, made Plaintiff's working conditions intolerable, forcing a reasonable person in Freeman's position to resign from her employment.

183. Defendants acted under color of law and did not have the discretion to act in an unlawful manner. Defendants, in their individual capacities, deprived Plaintiff of rights protected by the Equal Protection Clause of the United States Constitution.

184. Defendant Omaha Public Schools failed to act, such as a failure to adequately screen, train, supervise, or discipline municipal employees, or Defendant OPS' policymaker ratified the discriminatory actions of its employees, which forced Plaintiff to quit, or Plaintiff's resignation was a reasonably foreseeable or a predictable result of Defendants' actions.

185. Defendant Omaha Public Schools' failure to screen, train, or protect against sexual harassment or assault, or to comply with Title IX, has been a persistent, widespread pattern of unconstitutional conduct of which officials have notice and subsequently react with deliberate indifference or tacit authorization.

186. Defendant Omaha Public Schools was deliberately indifferent to the constitutional rights injured.

187. Defendants Omaha Public Schools, Ray Mitchell, and Tate-Collins, Morris acted with reckless or deliberate indifference to the rights of Plaintiff, which were clearly established under the law, and with malice.

188. As a proximate result of Defendants' unlawful constructive discharge, Freeman has suffered and continues to suffer substantial loss of past and future earnings, other employment benefits, all to Freeman's damage in an amount to be determined at trial.

189. As a further proximate result of Defendant's actions, Freeman has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental

anguish, pain and suffering, emotional distress, anxiety, loss of enjoyment of life, loss of self-esteem, loss of self-confidence, injury to her reputation, and other incidental and consequential damages and expenses, all to Freeman's damages in an amount to be determined at trial.

WHEREFORE, Plaintiff Freeman prays for judgment against Defendants Omaha Public Schools, Ray, Mitchell, and Tate-Collins in an amount which will fully and fairly compensate her for her general and special damages, for appropriate equitable relief, for interest as allowed by law, for attorneys' fees, for the costs and expenses of this action, expert fees, punitive damages as to requisite Defendants and for such other relief as may be just in the circumstances.

## Count Sixteen
### VIOLATION OF 42 U.S.C. § 1981—Constructive Discharge
### [Defendants: Omaha Public Schools, Ray, and Mitchell]

190. Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

191. Defendant Omaha Public Schools and/or their agents, with Defendants' authority, made Plaintiff's working conditions intolerable, forcing a reasonable person in Freeman's to resign from her employment.

192. Defendants' agents, with Defendants' authority, acted with the intent of forcing Plaintiff to quit, or Freeman's resignation was a reasonably foreseeable or a predictable result of Defendants' actions.

193. As a proximate result of Omaha Public Schools' discrimination, Freeman has suffered and continues to suffer substantial loss of past and future earnings, other employment benefits, all to Plaintiff's damage in an amount to be determined at trial.

194. The unlawful employment practices were willful, wanton, and malicious, and demonstrated a reckless indifference to or conscious disregard for the rights of Freeman under 42 U.S.C. § 1981.

195. But for Omaha Public Schools' violation and retaliation, Freeman has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, anxiety, loss of enjoyment of life, loss of self-esteem, loss of self-confidence, injury to her reputation, loss of employment opportunities, and other incidental and consequential damages and expenses, all to Plaintiff's damage in an amount to be determined at trial.

WHEREFORE, Plaintiff Freeman prays for judgment against Defendants Omaha Public Schools, Ray, Mitchell, and Tate-Collins in an amount which will fully and fairly compensate her for her general, special and punitive damages, for appropriate equitable

28

relief, for interest as allowed by law, for attorneys' fees, for the costs and expenses of this action, expert fees, and for such other relief as may be just in the circumstances.

<u>Count Seventeen</u>
**Sexual Harassment in Violation of Title IX**
**[Defendant: Omaha Public Schools]**

196.    Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

197.    Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. …[A]n educational institution means any public or private preschool, elementary, or secondary school, or any institution of vocational, professional, or higher education, except that in the case of an educational institution composed of more than one school, college, or department which are administratively separate units, such term means each such school, college, or department.

198.    Defendant Omaha Public Schools receives federal funding and financial assistance within the meaning of 20 U.S.C. § 1681(a), subjecting them to the requirements of Title IX.

199.    Defendant Omaha Public Schools had notice when it accepted federal funding under Title IX that it would be liable for actions that violated Title IX, including gender harassment.

200.    Freeman has been discriminated against by Omaha Public Schools on the basis of her sex in violation of Title IX, in that Plaintiff suffered a hostile, sexist workplace, and Omaha Public Schools subjected Freeman to unwelcome sexual harassment.

201.    Freeman was discriminated against by Omaha Public Schools on the basis of sex in violation of Title IX, in that Plaintiff was sexually assaulted by Morris as defined in the Clery Act.

202.    As a proximate result of Omaha Public Schools' discrimination, Freeman has suffered and continues to suffer substantial loss of past and future earnings, other employment benefits, all to Plaintiff's damage in an amount to be determined at trial.

203.    As a further proximate result of Omaha Public Schools' actions, Freeman has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, anxiety, loss of enjoyment

of life, loss of self-esteem, loss of self-confidence, injury to her reputation, and other incidental and consequential damages and expenses, all to Plaintiff's damage in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant Omaha Public Schools in an amount which will fully and fairly compensate her for her general and special damages, for appropriate equitable relief, for interest as allowed by law, for attorneys' fees, for the costs and expenses of this action, expert fees, and for such other relief as may be just in the circumstances.

## Count Eighteen
### Sex Discrimination in Violation of Title IX
### [Defendant: Omaha Public Schools]

204. Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

205. Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. …[A]n educational institution means any public or private preschool, elementary, or secondary school, or any institution of vocational, professional, or higher education, except that in the case of an educational institution composed of more than one school, college, or department which are administratively separate units, such term means each such school, college, or department.

206. Defendant Omaha Public Schools receives federal funding and financial assistance within the meaning of 20 U.S.C. § 1681(a), subjecting them to the requirements of Title IX.

207. Defendant Omaha Public Schools had notice when it accepted federal funding under Title IX that it would be liable for actions that violated Title IX, including gender discrimination.

208. Freeman has been discriminated against by Omaha Public Schools on the basis of her sex in violation of Title VII, in that Plaintiff was discriminated against with respect to the terms, conditions, or privileges of employment, resulting in some harm or a disadvantageous change to an employment term or condition.

209. As a proximate result of Omaha Public Schools' discrimination, Freeman has suffered and continues to suffer substantial loss of past and future earnings, other

employment benefits, all to Plaintiff's damage in an amount to be determined at trial.

210. As a further proximate result of Omaha Public Schools' actions, Freeman has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, anxiety, loss of enjoyment of life, loss of self-esteem, loss of self-confidence, injury to her reputation, and other incidental and consequential damages and expenses, all to Plaintiff's damage in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant Omaha Public Schools in an amount which will fully and fairly compensate her for her general and special damages, for appropriate equitable relief, for interest as allowed by law, for attorneys' fees, for the costs and expenses of this action, expert fees, and for such other relief as may be just in the circumstances.

<u>**Count Nineteen**</u>
**Retaliation in Violation of Title IX  (Based on Sex as Protective Activity)**
**[Defendant: Omaha Public Schools]**

211. Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

212. 34 CFR § 106.71 provides...
> A recipient must prohibit retaliation, including peer retaliation, in its education program or activity. When a recipient has information about conduct that reasonably may constitute retaliation under Title IX or this part, the recipient is obligated to comply with § 106.44....

213. Freeman engaged in protective activity by making sexual harassment/hostile work environment claims against Omaha Public Schools.

214. Omaha Public Schools knew that Freeman engaged in protected activity.

215. In retaliation for Freeman's protected complaint, Omaha Public Schools engaged in various retaliatory actions against Plaintiff, including conducting a sham/paint job, a non-Title IX compliant investigation into her complaints of sexual harassment and racial harassment, and constructively discharging her.

216. As a proximate result of Omaha Public Schools' retaliation, Freeman has suffered and continues to suffer substantial loss of past and future earnings, other employment benefits, all to Plaintiff's damage in an amount to be determined at trial.

31

217. As a further proximate of the Omaha Public Schools' violation and retaliation, Freeman has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, anxiety, loss of enjoyment of life, loss of self-esteem, loss of self-confidence, injury to her reputation, loss of employment opportunities, and other incidental and consequential damages and expenses, all to Plaintiff's damage in an amount to be determined at trial.

WHEREFORE, Plaintiff Freeman prays for judgment against Defendant Omaha Public Schools in an amount which will fully and fairly compensate her for her general and special damages, for appropriate equitable relief, for position reinstatement, for interest as allowed by law, for attorneys' fees, for the costs and expenses of this action, expert fees, and for such other relief as may be just in the circumstances.

## Count Twenty
### Intentional Infliction of Emotional Distress ("IIED")
### [Defendant: Michael Morris]

218. Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

219. Defendant Morris, an agent of Defendant Omaha Public Schools, engaged in intentional or reckless conduct towards Freeman by knowingly permitting or creating a sexually hostile work environment.

220. Defendant Morris' conduct was outrageous in character and so extreme in degree that it goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community.

221. Defendant Morris' conduct caused Freeman severe emotional distress.

WHEREFORE, Plaintiff Freeman prays for judgment against Defendant Morris in an amount which will fully and fairly compensate her for her injuries and damages, for interest as allowed by law, and for such other and further relief as is just in this case.

## Count Twenty-One
### Battery/Assault
### [Defendant: Michael Morris]

222. Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

223. Defendant Morris committed assault and battery by knowingly and intentionally touching and pulling Freeman close with the attempt to kiss her, with reckless disregard for her well-being, and doing so without her consent.

224.    Freeman's injuries were caused solely and proximately by the acts of Defendant Morris, an agent of Defendant Omaha Public Schools.

WHEREFORE, Plaintiff Freeman prays for judgment against Defendant Morris in an amount which will fully and fairly compensate her for her injuries and damages, for interest as allowed by law, and for such other and further relief as is just in this case.

### Count Twenty-Two
### Negligent Hiring/Supervision
### [Defendant: Omaha Public Schools]

225.    Plaintiff incorporates all preceding paragraphs by this reference as if fully set forth.

226.    Defendant Omaha Public Schools was negligent in hiring and retaining Defendants Ray, Mitchell, Tate-Collins, Hallem, and Morris.

227.    Defendants Ray, Mitchell, Tate-Collins, Hallem, and/or Morris' acts or omissions occurred in the scope of their employment with Defendant Omaha Public Schools, who are therefore legally responsible for their acts as forth herein.

WHEREFORE, Plaintiff Freeman prays for judgment against Defendant Omaha Public Schools in an amount which will fully and fairly compensate her for her injuries and damages, for interest as allowed by law, and for such other and further relief as is just in this case.

### VII.    PRAYER FOR RELIEF

WHEREFORE, Freeman respectfully requests that this court order Defendants to pay Freeman back pay, front pay, loss of earning capacity, loss of reputation, compensatory damages including non-economic losses, consequential damages, punitive damages, in amounts to be proven at trial, and all other affirmative and equitable relief necessary to eradicate the effects of Defendants' unlawful employment practices; including an award for Freeman's reasonable attorneys' fees, expert witness fees, and costs of this action; and grant such further relief as the Court deems necessary and proper under the law.

### VIII.    JURY DEMAND & PLACE OF TRIAL

Plaintiff requests a trial by jury in Omaha, Nebraska.

Dated this 12th day of January 2026.

KRISTIN D. FREEMAN, Plaintiff

BY:        Potso Mahlangeni-Byndon
Potso Byndon (Bar No. 27715)
BYNDON LAW
2016 Fowler Ave
Omaha, NE 68110
(P) 402-570-1287
potso@byndonlaw.com

ATTORNEY FOR PLAINTIFF